The last case of the day is Keybank v. Fleetway Leasing No. 18-2822. Good afternoon, Your Honor. Lawrence Gebhardt on behalf of Santander Bank, the Appellant. May I reserve three minutes for rebuttal? That will be granted. Your Honors, the District Court in this case should be reversed for three specific reasons, each of which is sufficient standing alone to require this result. The District Court's appointment of a receiver, but specifically the manner in which this was done, denied Santander Bank any due process of law, abused the District Court's discretion in the appointment, and violated Santander's rights as a secured creditor. Where did you argue to the trial judge that he was violating your due process rights? Well, Your Honor, number one, a scheduling conference is not amenable to arguing due process. When that order was entered, appointing the receiver on July 23rd, and we were given 48 hours to object to the appointment of Mr. Hangley, not in general. I filed objections. I objected specifically to the sua sponte appointment of a receiver. My understanding of sua sponte is when a court does something on its own initiative. That's exactly what happened. There was no request for a receiver made by Key Bank and First Source Bank? There was a request for a receiver in February of 2018. First Source Bank intervened, as did Santander Bank, solely to defend. A full hearing was held in front of Judge McHugh. Witnesses were present. The issues were addressed. And six specific reasons were advanced why Judge McHugh denied that receiver. Then you show up at a Rule 16 in front of Judge Dimon, and he offers without prompting that he's thinking about appointing a receiver. Well, Judge Dimon came out in his opening remarks and said, my strong inclination is to appoint a receiver. And he then launched out on how the situation had changed since Judge McHugh had it before him. Right. And when I read that entire transcript of that hearing, I didn't see anything from Santander or any of the other banks that said, Your Honor, with all due respect, we don't understand how you could think about appointing a receiver because we haven't had any due process. We would like a hearing. We would like an opportunity to brief the issue and be heard. I didn't see anything remotely like that in the transcript. Frankly, Your Honor, what occurred in that scheduling hearing wasn't was a hearing by ambush. Santander walked in believing that. Right. When a lawyer feels ambushed, the lawyer says, with due respect, Your Honor, I believe that this isn't the time or the place for this argument. I would seek leave of court to brief the matter and ask for a hearing. That was never done. Was it just a mistake of counsel? Well, remember, 48 hours and we were not given leave by the specific provisions of that order to raise issues like due process or abuse of discretion. We were given leave to oppose Mr. Hangley on substantive grounds. Namely, did he have a conflict of interest? So we were not permitted by the terms of the order to do it. I filed an objection. So a lawyer can't raise a due process objection. Unless a judge puts in an order of court that you have permission to raise a due process. No, but Your Honor, I would think that just thinking back when I was practicing, the times you'd be most likely to sort of jump up and down and say, Judge, you're violating my client's due process. Rights is precisely when the judge isn't appreciating that he or she is giving your client adequate process. First of all, the Supreme Court has said it is not necessary to shout due process as an incantation to preserve that issue. The Third Circuit has likewise agreed that to preserve an issue, it's not necessary to use any particular buzzword. We raised with the district court the concept that the district court was appointing a receiver on its own initiative without having been asked in the first instance by any particular party. We were given. The first time it was denied without prejudice, right? Well, the first time it was denied subject to being raised if there was a change of circumstances. Remember, there was never any evidence whatsoever before the district court when that receiver was appointed. There wasn't an affidavit. There was no testimony. There was nothing. But I think the problem is you raise a lot of different shades of due process. One is no opportunity to put on evidence. I didn't see in the record any place where he asked to do that. Well, when you go to a Rule 16 scheduling conference after you've already won and a receiver has been denied and you expect to discuss things like you've been told to submit a Rule 26F memorandum, you've been told to do all these things, and you walk into court and the judge walks out and says, I'm strongly inclined to appoint a receiver, and nothing else is discussed. No scheduling, no issues of discovery, nothing, and we're sent out. Rule 16 is pretty broad, though, isn't it? No, not broad like that. Well, you can enter orders that secure the just and efficient administration of the case. Isn't that what this was, really? Judge, no. Frankly, there was no basis to consolidate Santander's separately filed confession of judgment with the Key Bank First Source United case and the Fleetway suit against First Source. They were done. How long after this did you file your first objection to the use of a receiver? We were given 48 hours. Well, did you file one then? We filed an objection, yes, and I objected to the sua sponte appointment and I objected to the provisions of the order. Both Key Bank and First Source agreed with my interpretation. They said, that's a final order. You can't object as you've done because you have to file a motion for relief from a final order, not just an objection to your procedurally improper Santander. So you had a chance to raise it, and you did raise it, and you lost. Well, yes, we lost one two days later, and we've been raising due process as a specific buzzword to say ever since then. Because when you sit back and look and you find out two days later, what happened? We won the first case. We won it going away. All the grounds that Judge McHugh denied the receivership were the grounds that we wanted to advance. And the next thing you know, we've got a receiver. And what does the receiver do for us? The receiver simply increases our loss. There was no reason. Go to the receiver appointment. What relief do you want here? I'm concerned about, you know, there's probably even more blood on the floor now than there was back last July. In terms of the lenders recouping what they put out there. We want the receiver terminated as to our collateral. We would like to take back our collateral. Execute on your collateral. Repossess it, do whatever. We would have done that in the first instance. We have more competence in dealing with that collateral and dealing with the Fleetway than the receiver did. How many cars are we talking about for your client? Probably 500 or so. When are they coming off lease? Well, they're coming off periodically. What's the latest thing that's come off lease? I don't honestly know that off the top of my head, Your Honor. Our loan had matured. Santander has an entire division that's devoted to auto leasing. They could have taken over everything and done it themselves. They didn't need a receiver. Well, no one was stopping you from repleving the collateral prior to the order. A motion for a receiver is made back in before February. And from February to July, you could have been repleving your property. We were happy with what Fleetway was doing. You were happy with Cardone. Cardone was doing a good job. He was giving us reports. He was remitting the payments. We were getting more payments and reports from Cardone than we're getting from the receiver. All that's happening with the receiver is we have someone that's charging $825 an hour and basically doing what administrative people at Santander could do. If Santander needed a lawyer, that's what I'd do. We didn't need it. We told the court before. And that's why you objected to the receiver in the first place. Yes. So why, when Judge Diamond indicated he was strongly leaning toward a receiver, why didn't you go into action then and repleve? There was nothing stopping you from repleving your property then. Well, other than his order, we objected. No, no, he didn't enter an order. We objected to the order. No, forget the order. Okay. You show up at a Rule 16. And as I read your briefs, you were quite surprised, shocked even, that he says, I'm looking at appointing a receiver. There was nothing stopping you that day, the next day, the day after, from going and repleving your collateral. Why didn't you do it? That July 23rd order stayed us. It stayed everything. He entered that order on? July 23rd. At the Rule 16th? Immediately after. I thought it was after the Rule 16th. Well, he told us we could all wait in the hallway and get it. He was going to go back and draft it right then and there. So the order came out immediately that same day? Yes. Okay. And once he did that, we waited and the July 31 order was issued, and then we filed motions to terminate the receivership, to bar the receiver from selling our collateral, and we filed a half a dozen motions, and they were characterized as galling by Judge Diamond. Really, you just wanted a car vote. You just wanted to be able to pursue your collateral on your own terms and they could, you know, what the other banks had interest in was their business. Exactly. That's exactly what it was because the receiver did nothing for us. Instead, what we have is a situation where we're an undersecured creditor. First priority, but undersecured. Every dollar that you used to pay that receiver increases our loss. But you had to pay money for your own employees to try to get these cars sold, right? We have employees that do that day in, day out. Santander has its own lawyers. If we wanted to pick the cars up, we'd go out and do our replevins where they are. Your complaint is that the receiver wasn't as competent as your staff, right? He's not as competent and he's more expensive. I mean, we are going to suffer a larger loss because that receiver was appointed than if the receiver had not been appointed. And that shouldn't happen to us. We never asked for it. There was no reason to do that. And if they were going to do that to us, why didn't the judge give us some advance notice so that we would be thinking about it as we came into the rules? Is there a favoritism problem here? I mean, you've got two other big banks owed double what you're owed and then some, and they seem like this is the situation they want. So is this a matter of the receiver showing favoritism toward your competitor banks? No, not the competitor banks. Then why are they so happy with the arrangement and you're so upset with the arrangement? We just filed a motion, all five banks, asking the court for a status conference to discuss terminating this receivership. They're seeing that it isn't so good for them either. Then why are we here? Because that was denied. Denied out of hand and Santander was told they were the bad guy because we've been obstructing the receiver in his efforts to do. So let me get this straight. Key Bank, First Source, Santander, PNC, TD, all of you have agreed that you don't want the receiver any longer? We asked for a status conference with the court to discuss a termination date and when the receiver was going to end and put him on a budget so that there was just not unlimited money going out. The receivers billed over $600,000 already. Is any of it, though, toward your collateral? Well, yeah. Of course they're selling our collateral. They're collecting it. Is the receiver charging his expenses to your collateral? Yes. On March we had an informal agreement, the receivers council and I, that they would always keep enough in reserve that we could be paid. That has now evaporated because there's not enough money and the judge on March 26 authorized the receiver to now invade even the sale proceeds, not just the lease collections from collateral. So as far as we're concerned, the receiver is now fully authorized to dip in to our collateral. There's no saying, well, I've always got enough to pay you if you win on appeal. Let me ask you something practical then. The other banks, do they want to intervene here and make their position known? Well, PNC is in state court. TD Bank is in state court. And, frankly, there's no argument between the banks. TD and PNC are. Well, this is an appeal about what Judge Dawson's doing downstairs. But Judge Diamond entered an order as to them. They weren't even parties. They weren't even there. They didn't get a chance to raise their hand and say, we don't really want this. He came in and said it was such a free-for-all between the banks. There was no free-for-all. Everybody had their own identifiable collateral and could pick it up if they wanted to. I thought PNC and TD were there. They just didn't have their formal appearance. No. That was before Judge McHugh. Judge Diamond, when we were there, I pointed out to him that TD and PNC were not there. And I think we even pointed that out in our opposing memoranda that he's appointing receivers when there's people that are affected that didn't even have notice of what he was doing. All right. So it sounds like the relief you're seeking from us is that we vacate the order appointing the receiver for not having followed the applied, the equitable factors that are preconditions to the appointment of receiver. Although the likelihood of success, that's sort of obvious. I mean, you've got confessed judgments everywhere. So really we're dealing with the balancing of the equities and greater harm versus. I mean, all the decisions say this is a drastic remedy, a last resort. But I'm trying to get to which of the factors are really in play. And it seems to me likelihood of success vis-a-vis Fleetway, because that's the company over whom the receiver was appointed, likelihood of success, the banks versus Fleetway, that's a no-brainer because you're owed a ton of money and you've got confessed judgments everywhere. Right. And we got our confessed judgments. We didn't execute on them. We only, we got them to perfect the amount that we're owed and so we could record the judgments against the guarantors in other states. But we sat still and we were happy to work with Fleetway. Fleetway is no more. The receiver is in there. There's no more possibility of a company. It's just gone. So there's nothing pending before Judge Diamond at this point? Well, the receiver has another fee request that just came in yesterday and there's going to be an objection there because I think to preserve our rights, we must now object because our collateral is, there's not enough money to pay them without going into our collateral. Okay. Thank you, counsel. Thank you, Your Honor. Thank you. Good afternoon. May it please the Court, Matthew Hammermesh on behalf of the appellee, the receiver, Pendente Litte, William T. Angley. I want to focus briefly on three primary issues. One, Judge Hardiman touched on at the end, the standard for appointing a receiver. Well, can we start with the practicalities? Sure. Do you disagree with what counsel just said about the banks agreeing that the receiver should be terminated? Well, I think that's, no, I do disagree with that. The banks, just as a brief context, there are two pots of money here that are coming into the estate, lease payments and proceeds of sales of vehicles. We filed that we were using the lease payments to pay costs of receivership. The lease payments that come in are less than the proceeds of the sales, so we filed a motion with Judge Diamond to be allowed to use the proceeds, a portion of the proceeds of the sales to pay expenses as well. So just for purposes of a ripeness concern, the receiver has charged his expenses to Santander's collateral? Well, no, Your Honor. As Mr. Gephardt indicated, we have had an ongoing agreement that we will take our fees out of the pot of money that's there. There's a separate agreement, first of all, with all the lenders that says that that's without prejudice to anybody's rights. Second of all, we agreed specifically with Santander that because of this pending appeal, we're going to make sure there's enough money in that pot to pay 100 percent of what they're owed. Just briefly, from the lease payments and the sale proceeds, we give 75 percent of all of that to the lenders immediately, hold back 25 percent. We've agreed with Santander so far that from that 25 percent, we're going to make sure there's enough there that if they win this appeal and they're allowed to get every cent that's come from their collateral, we have enough money to pay that. So he's not right to say that going forward, we're just abandoning that agreement and going to start dipping into their collateral. All right. So they can be made whole if we vacate the receivership? That's correct. That's correct at present. And we've agreed that we won't dip into that without providing any money. I mean, it does seem like this was done, you know, I had trouble seeing where the due process argument was preserved, I assume. I think that's right, Your Honor. But let's assume they lose on that, on the procedural argument. I'm having great difficulty finding where the learned trial judge articulated the basic findings that would typically be expected for this drastic remedy. Yes, Your Honor. I think if you look two places, first of all, remember on July 23rd, there was a conference. At the end of the day, Judge Dimon entered an order proposing to appoint a receiver. And in that order, I think if you look at page two of the order, he has a paragraph where he says – What page in the appendix is this? Your Honor, I have a copy of the order. Okay. That's all right. But it's page two of the July 23rd order. There's a paragraph where he talks about – first of all, he says, as discussed on the record, and then goes into the facts that he believes are present that are underlying his decision to propose at that point to appoint a receiver. And then essentially the same paragraph appears, I think, on page two as well, of the July 31st order actually appointing a receiver. And critically, none of the parties, including Santander, made any objection to that paragraph. Well, that's what troubles me because, you know, initially when I read the file, I thought, well, the trial judge said the receiver was appointed without objection. So then really what was at issue was the suitability of this particular receiver, not a receiver generically. But when I looked at the file, Santander did object, not on behalf of FirstSource and KeyBank, but on behalf of itself and said that we do not – we, in respect to our collateral and what we are owed, we do not agree that a receiver is appropriate. We think Cardone is doing okay. There's talk of, you know, some new software program or something. So the objection was lodged, clearly. Right. This was not consented to by Santander. That's my point. Would you agree? I agree with that, Your Honor, but I think you have to look at what those objections said. They filed – in the eight days between the proposed order and the final order appointing the receiver, they filed three different pleadings totaling like 40 pages. And in those, I think they say we don't object – they say in that we don't object to Mr. Haney be appointed. They say we have a general objection to the appointment of a receiver. And then they say they object to various provisions of the receivership order. But if you look at the memo of law attached to that and then the response to KeyBank's objection and their reply to our response to their objection, the only issue they raised in there was as an argument that they presented precedent about and argued about was this question of subordinating their lien for the payment of receivership costs. They don't raise a due process issue. They mention briefly – I think they say there's an open issue whether a district judge can appoint a receiver sua sponte. They don't identify any other process issues. They didn't raise any question about the facts underlying Judge Diamond's proposed appointment of a receiver. And they didn't raise also – although I don't know that we addressed this in our brief – they didn't raise this issue about whether Judge Diamond could authorize the receiver to sell at their collateral free and clear of the liens in their objection to the receivership order. What is your best projection after this is all over how much these banks will get in relation to the liens that they had against them? That's a very difficult question, Your Honor, which I unfortunately can't answer at the moment. What I can say is – and I have a copy here of the monthly report we filed most recently covering the period from July to the end of February, which reflects that through the end of February the receiver has collected $10 million in lifeboat lease payments and through sales of vehicles. And that's about sales, I think, of about a third of the portfolio of vehicles. That's actually my next question. I'd like to know how quickly this is – I mean, is this all going to be done by the time we can pump out an opinion? I don't think so, Your Honor. And again, this is something we've discussed extensively with the lenders. If I recall correctly, the last lease that's in this portfolio ends in June of 2021. But taking out groups of leases where the vehicles have already or are about to be collected, half of the portfolio I believe will be run out by the end of this year and three-quarters of it by the middle of 2020, if I recall correctly. So it's going to be longer, I think, than it would take you to issue your opinion, but we're not talking about another five years. Let's assume – I think you're right. I don't think it's an assumption. I think it's just factual that some of the strong arguments being made in this appeal by Santander weren't necessarily put before Judge Diamond, and maybe it was because of the alacrity with which he moved. But isn't it also factually true that he just did not make findings about balance of harm to the parties, the public interest? There were sort of vague allusions to bad dealing. I wouldn't use the word fraud necessarily, but there was talk of hundreds of cars disappearing and things like that. I remember Mr. Reed for Fleetway was somewhat, I would say, evasive or at least cautious in responding to some of those challenges from the judge, and I assume that was troubling to the judge. But the findings that we would expect to see for the entry of an equitable remedy, like a receivership, like an injunction, like a stay, we don't have any of that here. Well, I think, Your Honor, and again, it's not a lot, but I can only refer you to what's in the two orders on the second page. And I'm looking at Santander's original objection that he pointed to the receiver on page 251 of the appendix, which lists factors which I believe are basically correct in the fraudulent conduct. And I think the cases also talk about fraudulent conduct or possible fraudulent conduct. There certainly were misrepresentations, unclear whether it's fraud or not, imminent danger of property being lost. And I think you really have to look at three things that Judge Diamond was considering in the context of five months having passed. But what you just glossed over, were those actual findings by the court or were those arguments of counsel? Is this in appendix two, page 251, you said? 251 is the list of factors cited by Santander. Is that in appendix, that's in appendix two. It's a joint appendix 251, volume two of the appendix, yes. All right, so let's look at, just slow down a little, you're going a little fast for me. Sorry, Your Honor. Obviously, what I'm fixated on, I don't know rightly or wrongly, but I'm fixated on what I think of the absence of the findings that we would expect to see for this form of equitable relief. And you're telling me that they're all there at 251. Well, no, 251 is the list of factors that Santander cited, although I don't think they argued about them. Well, 251, that's a memorandum of law by Santander. I'm asking where findings of the district court are. Yes, I understand, Your Honor. I'm sorry, I had the good fortune of being a trial judge. Findings of fact, conclusions of law, paragraph one. Santander is a citizen of thus and such. Paragraph two, key findings. Are there any findings in this case? Yes, Your Honor. I think the findings are on pages one through three of the district court's order of July 31st. And so there he talks about the confessed judgments of $18 million entered against Fleetway and the Stamps, the outstanding enforcement and replevant proceedings in New Jersey and New York, and the pending motion for writ of seizure, and the party's negotiations with the third party. And he also refers back to the extensive discussions in the hearing on July 23rd. Well, along the lines of what Judge Hardiman is saying, did the district court at any point consider less severe remedies, other remedies to take care of this? I mean, even just appointing a special receiver over Key Bank and FirstSource is collateral. Your Honor, I can't say what Judge Diamond considered. Obviously, you can look at the record for the hearing. I think at the hearing he says, I'm inclined to appoint a receiver. I don't think he talks about other remedies there. But I think then you have to. Isn't that grounds for vacating and remanding right there? No, it isn't. There should have been some mention of, here's why bankruptcy is not in the offing. Fleetway has no incentive to file bankruptcy. Here's why an involuntary bankruptcy filed by one of the lenders would be unhelpful. Here's why allowing the parties a month or two to replevy their own collateral. Here's why that's outweighed by appointing this receiver. Right, Your Honor. I think I agree that the record doesn't reflect any of that consideration, but I think you have to look at the case law both sides cited. Santander cites a bunch of cases where courts have said, appointing a receiver is a drastic remedy that should only be considered after all lesser remedies have been deemed inadequate. We cited a case, Canada Life v. LaPeter, where it says that a district court has broad discretion to appoint a receiver. It doesn't talk about, I think it says maybe it's an extraordinary remedy, but it doesn't say anything about this test of considering other remedies. I think the key consideration is that LaPeter is much more like this case than any of the cases Santander cites. LaPeter is also a case where a lender is coming into court asking for the appointment of a receiver to protect its collateral. The cases Santander cites don't involve lenders. They involve minority shareholders or the federal government seeking a receiver as part of a criminal forfeiture. The next year case that they cite involved a district judge considering a receiver as a remedy for litigation misconduct. In fact, the court in that sphere goes to extensive lengths to distinguish that situation from a case like this where you have a lender asking a court to appoint a receiver to protect collateral. Those cases are also different because in those cases, the company that was the subject of the receiver or its principals came into court and objected and filed an appeal. They have a much more direct interest. I think you've just identified what makes this case so interesting is the party that would usually be most vociferously objecting to seating control essentially rolled over and played dead. I think that's significant for this court's analysis. Maybe that's what influenced the district judge. Had all the creditors been on the same page, then maybe no findings were needed because you've got essentially a receivership by consent. But here you've got a creditor that's owed, I think, $6 million. Something like that. I think the total debt, Your Honor, is like $27 million. But you've got a creditor owed $6 million that's objecting. So it really isn't a receivership by consent. But I think, Your Honor, you also have to consider what the practical remedy could be here because you have customers of Fleetway that have leases that are subject to liens by four or five different lenders. Is it feasible, speaking as a receiver, is it feasible to carve out Santander, to make it whole from that 25%? I can't say that it's impossible, Your Honor, but I think it would significantly increase the cost for everybody. And I think it would significantly decrease the amount recovered on behalf of all the lenders because you'd have Santander going after a customer saying, you owe us money, and Fleetway, and the receiver on behalf of Fleetway saying, you owe us money. And it's different money for different cars, but the customers are going to take advantage of that and say, I don't know who I should pay. I'm just going to sit here and not pay anybody. And the cars are depreciating, and there's nothing we're going to be able to do about that. But if that were the case, then why would FirstSource and KeyBank be now having second thoughts about the propriety of your clients? Well, Your Honor, I wouldn't say that. They haven't asked to terminate the receivership. In response, getting back to that point, in response to our request to be allowed to use the proceeds of the sale, they asked that the court schedule a status conference to consider imposing a budget including an absolute cap on monthly and aggregate fees and set an end date for the receiver down the road. Judge Diamond, that wasn't a response to our motion. Judge Diamond granted our motion, and they haven't filed a motion or a request to ask the court to do that. All right. So if I understand your answer, you're saying that KeyBank and FirstSource and perhaps TD and PNC are looking to rein in the receiver, not scuttle the receiver. I think that's right. And Sincindere wants to go back to the status quo ante of never having been subject to the auspices of the receiver. For its own collateral, yes, Your Honor. And just to be, I want to be 100% clear about one issue, Your Honor, which is that FirstSource Bank is in a slightly different position in that prior to the appointment to the receiver, about the time of the hearing before Judge McHugh, FirstSource went out to the customers and demanded that they pay them directly. So FirstSource has been on its own collecting collateral. I would say that that hasn't been an easy situation for us to deal with. We've had some fights that ended up before the court. Was that in violation of the receivership order? No, no, because they were already doing that before we appointed, they objected on that ground to the receivership order, and we agreed to a modification that allowed that to continue. But we've had a fight, for example, about selling cars that came in that were subject to liens by FirstSource which ended up before Judge Diamond. Thank you, counsel. Thank you. Just briefly, Your Honor, at the July 23rd scheduling conference, in the July 23rd receivership order and in the July 31 confirmation, Judge Diamond made various remarks about Fleetway and its situation. He had absolutely no evidence on which to do that. He just simply said this is how it is, the situation is worse, I see confusion, I see this. How he even knew some of these facts, they certainly didn't come to him through judicial means. But whatever he did, he had absolutely no evidence, not even an affidavit before him. Mr. Reed didn't push back much. Well, Mr. Reed, frankly, and we're dealing with Mr. Reed now in the confessions of judgment. I mean, whether he pushed back or not. Hardly at all. I mean, I read the transcript. He rolled over. Well, I unfortunately would probably agree with you. He should have pushed back as hard as Santander ultimately did. But basically, Fleetway was then dead. It was there. He didn't have to roll over and play dead. It already was dead. Exactly. Those remarks, the judge, and I'm not calling them findings, because if you say they're findings, they're absolutely clearly erroneous. The precedent is if a court makes a finding of fact with no evidence to support it, it's clearly erroneous. And that judge had no evidence whatsoever to support any of the remarks he made in the hearings or in his two orders. What happens if you win here? Where do we go? Well, where do we go? We go take back the balance of our vehicles, and our vehicles are distinct. They have vehicle identification numbers separately. Are some of them sold already? Some have been sold, but according to Mr. Hammermesh, they've got enough money on hand to pay us the proceeds of it. That must have warmed your heart. That didn't seem to be consistent with what you thought the case was when you first stood up to it. That was part of our agreement to not file continued fee objections. But let me tell you where they get paid. First Source and Key Bank, because they initially asked for a receiver and reaffirmed to Judge Diamond that they would like a receiver, their collateral can be charged because they've consented to the payment from their collateral. We have not. We're undersecured. We're going to suffer a loss if any of our collateral is used. You're going to suffer a loss either way, don't you? Yes, but the loss will be greater. Think of why Key Bank and First Source aren't here now sitting at the council table, the receiver is, because this receivership benefits only the receiver. It doesn't even benefit Key Bank and First Source, who probably could have dealt with their collateral better themselves. TD Bank and First Source aren't even participating in it. Santander Bank looked and said, we're not going to step by and see our losses increased for no purpose, no legitimate reason. So we ask this court to reverse at least as to Santander and its collateral. Thank you, Your Honor. Thank you, Counsel. We thank Counsel for their excellent arguments, briefing. We'll take the case under advisement. We'd like to, if Counsel are amenable, meet at sidebar, and we'd ask that Ms. Kavursky adjourn the court.